OPINION
{¶ 1} This declaratory judgment and breach of contract action arises from plaintiff-appellee, Safe Auto Insurance Co., denying coverage to its insured, defendant-appellant, Julie Hasford, who had reported her automobile stolen on November 21, 2005. For the reasons that follow, we affirm.
 {¶ 2} On August 24, 2005, Julie Hasford purchased a 2001 Honda Accord. Hasford had a policy of insurance with Safe Auto which covered the car for any physical *Page 2 
damage to the car including replacement, repair, or payment for the value of the car. The policy contained an exclusion for losses sustained while the vehicle was being operated by a resident of Hasford's household or a regular user of the vehicle if the resident or regular user was not listed as an additional driver on the declarations page. Hasford's boyfriend, Jack Jenkins Jr., was not listed as an additional driver.
 {¶ 3} On November 20, 2005, Hasford and Jenkins were preparing for a trip to Virginia. Jenkins drove Hasford's car within the complex to a washing station. After washing the car, he parked the car in a space in front of Hasford's apartment. Later that evening, he moved the car into the garage to unload items that were unnecessary for the trip. He scraped or scuffed the right front bumper on the side of the garage, but the scuff was inconsequential white paint that he said would rub right off. Hasford, who was suffering from a broken leg and was on pain medication, remembered that in the middle of the night, Jenkins had told her that he wrecked the car.
 {¶ 4} In the morning, Hasford looked for her car, but it was gone. Jenkins suggested that she call the police. Hasford reported her car stolen at approximately 10:00 a.m. on November 21, 2005. Unbeknownst to Hasford, the heavily damaged car had been recovered by the police on November 21, 2005 at about 4:00 a.m., in the parking lot of a shopping mall, a short distance from Hasford's apartment.
 {¶ 5} After Hasford notified Safe Auto that the vehicle had been stolen, Safe Auto immediately mailed out a loss report for Hasford to complete along with an Affidavit of Theft. Hasford did not return the Affidavit of Theft until February 18, 2006. *Page 3 
 {¶ 6} Hasford and Jenkins contacted the police impound lot several times, and were told that the car was not there. Eventually, they realized that they had been using the wrong vehicle identification number. Finally, on December 27, 2006, Hasford retrieved her car. She found the keys still in it, along with her suitcase and another bag of clothes she had packed for the trip.
 {¶ 7} Hasford did not immediately advise Safe Auto that the car had been recovered. She waited until January 23, 2006 to do so. On February 18, 2006, Hasford returned the Affidavit of Theft. Safe Auto then assigned an investigator to the claim. The investigator reviewed the file and police reports, contacted police, spoke briefly with Jenkins by telephone, and interviewed Hasford who was accompanied by counsel. Hasford told the investigator that Jenkins was living with her, and that Jenkins had woken her during the night to inform her that he had wrecked the car. Jenkins, however, denied being involved in any accident with the vehicle.
 {¶ 8} Following its investigation, Safe Auto conducted an examination under oath of Hasford. The examination had to be rescheduled at the request of Hasford's attorney. At her examination, Hasford stated that Jenkins had been living with her since September 2005. (EUO at 8-9, 13-14). She stated that Jenkins used her car "[a] couple times a week," usually to go to the grocery store. Id. at 47.
 {¶ 9} Safe Auto proceeded to file a declaratory judgment action on July 19, 2006, alleging that it did not owe coverage because Jenkins was residing with Hasford, he was not listed as a driver, and that at the time of the accident, Jenkins was operating the *Page 4 
vehicle. On July 25, 2006, Safe Auto informed Hasford by letter that her claim was denied.
 {¶ 10} On August 1, 2006, Hasford filed an answer and counterclaim for declaratory judgment, breach of contract, and bad faith. She included a jury demand. Safe Auto filed a reply to the counterclaim and its own jury demand.
 {¶ 11} The parties filed competing motions for summary judgment. On April 4, 2007, the trial court granted Safe Auto summary judgment on the bad-faith claim, but otherwise denied both motions finding genuine issues of material fact.
 {¶ 12} The matter proceeded to a jury trial on the breach of contract claim on November 26, 2007. On the Friday before trial, Hasford failed to deposit a $300 jury fee to comply with Franklin County Common Pleas Court Loc. R. 9.07. Safe Auto objected, but the trial court permitted the matter to proceed to a trial by jury.
 {¶ 13} The jury found in favor of Hasford and awarded her $12,711.34 in damages for the breach of contract. The damages were comprised of the estimated cost of repairs, towing, storage, and a rental car. The jury answered two interrogatories as follows: "Do you find Jack Jenkins resided with Defendant prior to the accident on or about November 20, 2005?" The jury answered: "Yes." The second interrogatory read: "Do you find Jack Jenkins operated Defendant's motor vehicle on or about November 20, 2005 at the time of the accident?" The jury answered: "No."
 {¶ 14} Hasford filed post trial motions for a new trial on damages and for attorney fees. On February 28, 2008, the trial court denied both motions. *Page 5 
 {¶ 15} Hasford appealed the partial summary judgment on bad faith and also trial court rulings related to damages. She presents the following assignments of error on appeal:
 1. The trial court erred by granting summary judgment to Safe Auto on Julie's bad faith claim.
 2. The trial court erred by ruling, at trial, that Julie was not competent and therefore not permitted to testify regarding the value of her automobile and to present evidence of all her damages.
 3. The trial court erred by denying post trial motions for a new trial on damages and, separately, for attorney fees.
 {¶ 16} In her first assignment of error, Hasford argues that the trial court applied the wrong standard to decide whether Safe Auto breached its duty to act in good faith. Hasford also argues that there were factual disputes within the bad faith claim that precluded summary judgment.
 {¶ 17} We review a summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 18} Since we are reviewing the partial summary judgment under a de novo standard, Hasford's argument that the trial court used the wrong standard of proof is *Page 6 
essentially moot. The Supreme Court of Ohio has held that: "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Zoppo v. Homestead Ins.Co. (1994), 71 Ohio St.3d 552, paragraph one of syllabus.
 {¶ 19} Here, Hasford's claim of bad faith was based upon her claim that Safe Auto conducted an inadequate investigation and unreasonably delayed acting on her claim. In particular, Hasford asserted that Safe Auto failed to conduct more than a cursory interview with Jenkins, a key witness.
 {¶ 20} Upon review of the evidence before the trial court at the time the motions for summary judgment were filed, we conclude that as a matter of law, Safe Auto had a reasonable justification for denying the claim. It is undisputed that Hasford herself told the investigator and also stated under oath, that she and Jenkins were living together. She also stated that on the night the car was allegedly stolen, Jenkins awoke her and told her that he had wrecked the car. When the car was recovered, the keys were in it, Hasford's suitcase was still there, and there was change in the cup holder.
 {¶ 21} With respect to delay, Hasford also told the investigator "that she had the vehicle towed to her residence from the impound lot because she wanted to confer with her legal counsel before she proceeded because after seeing the damage she was unsure whether Jenkins had hit and killed someone in her vehicle." (Report of Investigation, at 3.) Because of her concerns, Hasford retained criminal counsel, and it was counsel's inability to be present for the examination under oath that precipitated *Page 7 
some of the delay. Therefore, most of the delay in investigating the claim could be attributed to Hasford.
 {¶ 22} Regardless of whether the investigator should have conducted a more thorough investigation, it was not unreasonable for Safe Auto to base its denial of coverage on Hasford's own statements that Jenkins told her that he had wrecked the car, and that Jenkins was living with her in the weeks and perhaps months before the alleged theft. Jenkins' denial that he was driving the car became the ultimate factual issue upon which the jury found a breach of contract. However, there existed circumstances that provided a reasonable justification for denial of the claim. Construing the evidence most strongly in favor of Safe Auto (the non-moving party on the bad-faith claim), summary judgment on the bad-faith claim was based on evidence that provided a reasonable justification for the denial of the claim.
 {¶ 23} The first assignment of error is not well-taken.
 {¶ 24} Hasford's second assignment of error concerns a ruling at trial to exclude certain evidence. The admission or exclusion of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon a showing of an abuse of discretion. Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 299.
 {¶ 25} At trial, Hasford attempted to testify as to the value of her car by means of a document showing the total price of her vehicle including interest over the life of the five-year loan. Safe Auto objected to this evidence, and the trial court limited the evidence of damages to the cost of repair, the cost of a rental car, and other damages including towing and storage. *Page 8 
 {¶ 26} Hasford contends that the trial court erred by limiting the evidence on damages. Hasford argues that she should have been permitted to testify as to the "full value of the car" prior to the accident as demonstrated by her monthly statement showing a purchase price of $23,159.40 which included principal and interest. Hasford also sought to testify that, after the accident, the car was worthless to her in its current condition. Hasford argues that, in Ohio, a property owner is considered qualified to give an opinion as to the value of personal property, particularly where the property may have a peculiar worth to the owner. In other words, Hasford sought to obtain as her measure of damages what she paid for the car three months prior to the accident including the principal and a finance charge of 14.99 percent for the life of the five-year loan.
 {¶ 27} Safe Auto responds that the general rule is that the owner of a damaged vehicle may recover the difference between its market value immediately before and immediately after the accident. Moreover, Safe Auto contends that the correct measure of damages if the value of the vehicle exceeds the cost of repairs is that the insured would be entitled to the cost of repairs.
 {¶ 28} This court had the opportunity to address the issue of damages as a result of an automobile accident in Rakich v. Anthem Blue Cross Blue Shield, 172 Ohio App.3d 523, 2007-Ohio-3739. Rakich was a tort action which included a claim for the diminished value of the vehicle after it was repaired. This court noted that the rules controlling recovery of compensatory damages to personal property generally apply to cases involving damage to vehicles. Id. at ¶ 8. In a tort action, as in the contract action involved in this case, the measure of damages is that which will make the injured party *Page 9 
whole. This court reiterated the preferred measure of computing damages as follows: "`the owner of a damaged motor vehicle may recover the difference between its market value immediately before and immediately after the collision.'" Id. at ¶ 9, quoting Falter v. Toledo (1959), 169 Ohio St. 238, at paragraph one of the syllabus. If a vehicle is damaged only to the extent that it is reparable within a reasonable time, the owner may also recover for the loss of use of the vehicle for the reasonable time necessary to make the repairs. Rakich, at ¶ 9. When a vehicle cannot be repaired, the general rule is that the owner may recover the difference between the market value of the vehicle immediately before the damage and the salvage value of the wreckage. Id.
 {¶ 29} The difference between the market value of a vehicle immediately before the accident and the market value of the vehicle immediately after its repair is referred to as "residual diminution in value." Id. at ¶ 14. This court has held that if the repaired vehicle does not have the same market value as the vehicle before repair, the owner may receive additional damages to compensate her for the residual diminution in value.
 {¶ 30} Here, Hasford sought to introduce evidence of what she would have paid for the vehicle at the conclusion of the life of the loan, not the fair market value of the vehicle at the time of the accident. This was not competent evidence of the market value of the vehicle and would have served to confuse the jury. The cost of repair was determined to be $7,528.44, substantially less than the alleged value. Therefore, while Hasford may have been competent to testify as to the value of her car before the accident, she was not prepared to offer competent evidence as to the value of the vehicle. This limited Hasford in the damages she could properly be awarded. Because the *Page 10 
proffered evidence was not competent evidence of the market value of the car, she could not show residual diminution in value. Therefore, the trial court did not err in excluding the evidence.
 {¶ 31} The second assignment of error is not well-taken.
 {¶ 32} In her third assignment of error, Hasford argues that the trial court erred in overruling her motion for a new trial on damages, the proper date for prejudgment interest, and for attorney fees.
 {¶ 33} The granting of a new trial pursuant to Civ. R. 59(A) is a matter within the sound discretion of the trial court. Douglas Elec.Corp. v. Grace (1990), 70 Ohio App.3d 7, 16. Furthermore, a trial court's denial of a motion for a new trial based upon an allegedly insufficient damages award will not be reversed on appeal unless the trial court abused its discretion. Johnson v. Pierce, Union App. No. 14-07-14, 2007-Ohio-6234, at ¶ 7.
 {¶ 34} For the reasons discussed in connection with assignment of error two, the trial court did not abuse its discretion in denying the motion for a new trial on damages.
 {¶ 35} Hasford next argues that the trial court erred by acceding to Safe Auto's request that prejudgment interest run from February 8, 2006 instead of November 21, 2005, the date the claim was made. We find no error in the trial court's decision to assess prejudgment interest from February 8, 2006 forward.
 {¶ 36} Under R.C. 1343.03(A), prejudgment interest runs from "when money becomes due and payable." In this case, Safe Auto learned the vehicle had been recovered on January 23, 2006, and the estimate was prepared on January 25, 2006. *Page 11 
Realistically, the vehicle could have been repaired two weeks later which makes February 8, 2006 an appropriate date from which the repair bill would have become due and payable. We find no error in the trial court's determination.
 {¶ 37} Finally, Hasford argues that she should have been awarded her attorney fees due to Safe Auto's obdurate behavior and bad faith. Hasford argues that Safe Auto engaged in a calculated strategy to delay, deny, and defend against the claim "for no good reason." (Appellant Brief, at 22.)
 {¶ 38} As discussed in connection with assignment of error one, summary judgment on the bad-faith claim was appropriate. The issue of whether Jenkins was a resident of Hasford's home and the issue of whether Jenkins was operating the vehicle at the time of the accident were submitted to the jury.
 {¶ 39} Turning to the cross appeal, Safe Auto filed a cross appeal as to whether Hasford's failure to pay a $300 jury fee should have resulted in a waiver of the jury and a trial to the bench.
 {¶ 40} The cross-assignment of error is as follows:
 The Trial Court erred when it allowed the matter to proceed to a jury trial in violation of Franklin County Common Pleas Court Local Rule 9.07.
 {¶ 41} Loc. R. 9.07 of the Franklin County Court of Common Pleas provides as follows:
 The first party making a jury demand in a civil action before this court, shall deposit $300 with the clerk of courts no later than the Friday before the trial date reflected in the case schedule. Failure to deposit $300 within the time allotted shall constitute a waiver of jury. *Page 12 
 {¶ 42} The issue before us is whether noncompliance with the local rule mandates a waiver of a jury trial, or whether the trial court retains discretion to allow a jury trial to go forward.
 {¶ 43} Safe Auto contends that the plain language of the rule mandates that failure to comply with the rule waives one's right to a trial by jury. Safe Auto cites several cases in which courts upheld the waiver when a party failed to deposit security for costs. See, e.g.,Walters v. Griffith (1974), 38 Ohio St.2d 132.
 {¶ 44} In Walters, the plaintiff did not request a trial by jury but the defendant did. The defendant failed to pay the deposit required by local rule, and the trial court held that the jury trial was waived. The Supreme Court of Ohio held that "[l]ocal court rules, requiring an advance deposit as security for the costs of a jury trial and providing that the failure of a party to advance such deposit constitutes a waiver of the right to a trial by jury, are moderate and reasonable regulations of the right of trial by jury, and are constitutional and valid." Id. at syllabus. The court found that the local rule was supplementary to Civ. R. 38(B). Id. at 133-134. As noted in Ogdahl v. Drown,168 Ohio App.3d 49, 2006-Ohio-3376, at ¶ 10, Civ. R. 39(B) vests discretion with the judge to order a jury trial.
 {¶ 45} After finding the local rule to be valid and constitutional, the Walters court then went on to discuss the application of the rule "to the particular circumstances here involved." Id. at 134. Therefore, the primary case cited by Safe Auto actually supports Hasford's position that the trial court retains discretion in how it applies the rule to specific cases. *Page 13 
 {¶ 46} In Skiadas v. Finkbeiner, Lucas App. No. L-05-1094,2007-Ohio-3956, the trial court enforced a waiver provision upon a party because counsel's conduct (in depositing the fee four hours late after having been warned) was a "flagrant neglect of following what's required by attorneys who practice in this court." Id. at ¶ 30. The court of appeals affirmed the decision of the trial court finding no abuse of discretion.
 {¶ 47} In Wade v. Oglesby (1991), 74 Ohio App.3d 560, another case cited by Safe Auto, the local rule provided that the party demanding a jury trial was required to make an advance deposit of $125 within ten days of filing of the jury demand. The appellant filed a jury demand on February 15, 1990, which was allowed by the trial court, more than ten days later, and the case was reset for a jury trial to commence on May 31, 1990. On April 30, 1990, the appellees filed a motion to strike the jury demand on the basis that the appellant had not deposited his jury fee with the court within ten days of filing. The appellant paid the $125 deposit on May 1, 1990. The trial court held that the late deposit constituted a waiver of the right to a jury trial.
 {¶ 48} The Huron County Court of Appeals reversed, finding that the appellant had substantially complied with the local rule by making his deposit 30 days before the scheduled trial. The court of appeals found that the trial court had abused its discretion, in part, because the trial court granted appellant's right to a trial by jury after the ten-day limit had expired.
 {¶ 49} Here, there was no prejudice to Safe Auto resulting from the trial court's decision to allow the case to proceed to a jury trial. Contrary to Safe Auto's assertion at oral argument, both parties had filed a jury demand in this case. (Answer to Defendant's *Page 14 
Counterclaim, at 5.) It is somewhat disingenuous for Safe Auto to argue that the case should not have been allowed to proceed to a jury trial when Safe Auto made the same demand as Hasford.
 {¶ 50} The issue concerning the jury deposit was raised sua sponte by the trial court just before the prospective jurors were allowed in the courtroom. The trial court permitted Hasford to deposit the jury fee on a break prior to commencing trial. The trial court noted that there was no prejudice to Safe Auto in allowing the jury trial to proceed given that Safe Auto had previously submitted proposed jury instructions. (Tr. at 7.)
 {¶ 51} We conclude that the trial court retains discretion to permit a jury trial to go forward if the deposit is made after the time limit in the local rule. Moreover, we agree that the trial court did not abuse its discretion by allowing the case to proceed to a trial by jury. The assignment of error in the cross-appeal is not well-taken.
 {¶ 52} Based on the foregoing, we overrule assignments of error one, two, and three, and overrule the single assignment of error in the cross-appeal. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BRYANT, J., and McGRATH, P.J., concur. *Page 1